UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

ANTHONY PRATT,                                          Civil No. 03-3259 (JNE/AJB)

        Plaintiff,

        v.                                          **REPORT AND RECOMMENDATION**

CORRECTIONS CORPORATION OF
AMERICA, DARIN SWENSON,
ASSISTANT WARDEN WANGELER,
JEFF BERGER, D. ENGELBRECHT,
BARRY BRACE, MARIA WELLNITZ and
PATRICK O'MALLEY,

        Defendants.

_____

      Plaintiff, a prisoner of the State of Wisconsin, is seeking relief under 42 U.S.C. § 1983

for alleged violations of his federal constitutional rights.  He claims that Defendants violated

his First Amendment right to freely exercise his religious beliefs while confined at the Prairie

Correctional Facility ("PCF") in Appleton, Minnesota.  Defendants filed a motion for summary

judgment pursuant to FED. R. CIV. P. 56(b), contending that they are entitled to judgment as

a matter of law because: (1) Plaintiff's claims regarding the conditions of his confinement were

mooted by his transfer outside the CCA system; (2) Plaintiff's alleged loss of weight is

insufficient to support a federal claim based on mental, emotional or physical injury; (3) even

if Plaintiff has alleged a sufficient injury, Defendants are entitled to judgment under the First,

Fifth, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"); and (4) no contract exists between Plaintiff and Defendants and

Plaintiff's contract claim must be dismissed.  (Docket No. 90-94.)

This matter was referred to the undersigned Magistrate Judge of the District Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).  For the reasons discussed below, it is recommended that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

During the past few years, the Wisconsin Department of Corrections ("WDOC") lacked sufficient inmate capacity to house all of its prisoners.  The WDOC thereafter contracted with the Corrections Corporation of America ("CCA"), a private prison company, to provide housing for some Wisconsin prisoners.  Plaintiff is one of the many Wisconsin prisoners affected by the contractual arrangements between WDOC and CCA.  Sometime in 2002, Plaintiff was transferred to PCF, a CCA facility located in Appleton, Minnesota.

Plaintiff claims to be a "sincere believer in the Orthodox Islam religion," and must therefore comply with certain strict dietary practices.  (Compl., [Docket No. 2], p. 6, ¶ 1.)  He claims that his religious beliefs require him to eat only a "Halal diet" which he describes as "foods that's invoked by the name of Allah before slaughter."  (Id. at ¶ 3.)  According to Plaintiff

> "Foods that may be eaten include all non-animal products such as fruits and vegetables, Foods that may not be eaten are red-meat, chicken, or turkey that was slaughtered in a way contrary to Islamic prescriptions or is slaughtered by a non-Muslim who is not from the People of the Book (i.e. not Jew or Christian). If these conditions are not met, the meat is unlawful to consume and it is obligatory for the Muslim to avoid it."

(Id. at ¶ 4.)

On or about September 4, 2002, Plaintiff submitted an informal grievance to a PCF

chaplain, Defendant D. Engelbrecht, complaining about his diet at PCF.  (Id. at p. 4,  ¶ 1.)  A few days later, Plaintiff filed a formal grievance, again complaining that there was "no adequate religious diet in place for those who practice the Islamic faith, of which the tenets proscribed [sic] abstaining from eating all meats not invoked according to Islamic jurisprudence."  (Id. at ¶ 3.)

On October 2, 2002, Plaintiff was informed by PCF's food service administrator, Defendant Marcia Wellnitz, that "steps would be taken to implementing [sic] a Halal Food Diet to accommodate [Plaintiff] and other practicing Muslims who could not eat any meats being served daily, due to religious held beliefs."  (Id. at ¶ 5.)  On that same date, Plaintiff also met with an assistant warden, Defendant Wengeler, who told him that he would continue to receive a vegetarian diet, "until contact could be made with Wisconsin as to how the issue of a Halal/Koesher [sic] diet could be put in place."  (Id. at pp. 4-5, ¶ 6.)  Plaintiff decided to accept the vegetarian diet "for the time being," but he expected PCF to provide him with a "Halal diet" as soon as PCF received approval from the WDOC.  (Id. at p. 7, ¶ 7.)

In early December 2002, Plaintiff submitted another written grievance, this time addressed to Defendant Barry Brace, the Food Service Manager at PCF.  Plaintiff pointed out that there had been no change in the dietary options provided at PCF.  Brace advised Plaintiff that "he was still awaiting information from Wisconsin."  (Id. at p. 5, ¶s 7-8.)

In late January 2003, Plaintiff wrote a long letter to the Warden at PCF, Defendant Darin Swenson, which reiterated his dietary expectations.  (Id. at ¶ 9.)  Defendant Swenson allegedly failed to respond to that letter, so Plaintiff submitted another grievance in early March of 2003.  (Id. at ¶ 10.)  Shortly thereafter, Plaintiff was informed by Defendants Engelbrecht

and Swenson, (and perhaps others as well), that the WDOC had declined to authorize any new dietary options for him.  As explained in a notation by Defendant Engelbrecht, "Wisconsin DOC IMP [Internal Management Procedures] does not include a Halal Food Diet for the Islam/Muslim person."  (Id. at App. # 10.)  Defendant Swenson likewise told Plaintiff:  "No approval [from WDOC] was received.  Your religious diet request is not required by IMP # 6."  (Id. at App. # 13.)

On April 7, 2003, Plaintiff filed a complaint in the United States District Court for the Western District of Wisconsin.  He brought his suit against the "State of Wisconsin Department of Corrections Division of Adult Institutions (Jon E. Litscher, Secretary)," Corrections Corporation of America "on Behalf of Prairie Correctional Facility," and several individuals employed at PCF – Warden Darin Swenson, Assistant Warden Wengeler, Program Manager Jeff Berger, Chaplain D. Engelbrecht, Food Service Manager Barry Brace, Food Service Administrator Marcia Wellnitz, and Chief of Security Patrick O'Malley.

The complaint alleged that WDOC violated Plaintiff's First Amendment right to freely exercise his religious beliefs, by not authorizing PCF to provide him with the Halal diet that he requested.  Plaintiff apparently acknowledged that WDOC allows him to have a vegetarian diet or a "no pork" diet, (Id. at p. 9, ¶ 1), but he claimed that he must be given a special Halal diet – i.e., a diet that includes various types of meat that have been obtained, prepared and served in a manner that conforms to his Islamic beliefs.  Plaintiff alleged that all of the named Defendants were aware of his need for a special diet to satisfy his religious needs, and he further alleged that the vegetarian diet that he was given in lieu of a Halal diet was inadequate because it did not meet his nutritional needs.  Plaintiff's ultimate claim is that Defendants

4

violated his rights under the First, Fifth and Fourteenth Amendments, as well as his rights under the Religious Freedom Restoration Act, (42 U.S.C. §§ 2000bb-2000bb-5), by refusing to accommodate his alleged need for a Halal diet.

The "Relief Requested" section of Plaintiff's complaint contained a long list of demands for prospective relief, including a declaratory judgment and an injunction that would require Defendants to fulfill his First Amendment rights by providing him with a Halal diet. (Compl., pp. 14-15.) This section of the complaint also included the following paragraph:

> "(c) **Compensatory Damages: Ordering** Defendants pay Plaintiff attorneys fees, the cost of litigation, and any amount set forth by the Court for the severe emotional and phychological [sic] injuries deemed appropriate and just as a result of the Defendants['] conduct as detailed above."

(Id. at p. 16.)

A few weeks after Plaintiff filed his complaint, the District Court for the Western District of Wisconsin entered an order, (presumably pursuant to 28 U.S.C. § 1915A), which held that WDOC was immune from Plaintiff's claims under the Eleventh Amendment. WDOC was therefore "DISMISSED as a defendant." (Order, May 1, 2003; [Docket No. 3].) Plaintiff filed a "motion for reconsideration" as to that ruling, (Docket No. 4), as well as a motion for change of venue, (Docket No. 7). The Wisconsin District Court denied Plaintiff's motion for reconsideration, but granted his request for change of venue. The Court then ordered that the action be transferred to this District because Plaintiff's claims arose here in Minnesota. (Order, May 13, 2003; [Docket No. 8].)

Before the case was transferred to the District of Minnesota, Plaintiff was moved from PCF to another CCA facility located in Sayre, Oklahoma. Sometime later, Plaintiff was

transferred again, this time to a CCA facility located in Watonga, Oklahoma. Just recently, the Court received some correspondence from Plaintiff, (Docket No. 27), which indicates that he is still in Oklahoma, but he is expecting to be transferred back to Wisconsin quite soon.

On July 15, 2003, Defendants moved to dismiss the complaint, alleging that the action was moot because Plaintiff was no longer confined at PCF. (Docket No. 15). They further contended that Plaintiff's claim for money damages was barred by the Prison Litigation Reform Act ("PLRA"). By Report and Recommendation, dated December 19, 2003, this Court found that only Plaintiff's claims for prospective relief were rendered moot by reason of his removal from PCF and that Plaintiff's damage claim was barred by the PLRA. (Docket No. 28.) Thus, the Court concluded that Plaintiff's complaint failed to state any claim on which relief can be granted and recommended that Defendants' motion to dismiss be granted. On March 3, 2004, the Honorable David S. Doty[1] granted Defendants' motion to dismiss and adopted the Report and Recommendation. (Docket No. 34.)

Plaintiff appealed, and February 15, 2005, the Eighth Circuit Court of Appeals reversed and remanded. See Pratt v. Corrections Corp. of America, 124 F.App'x 465, 467 (8th Cir. 2005). The Eighth Circuit held that: (1) Plaintiff's prospective claims for injunctive and declaratory relief against CCA were not moot because he continued to be held in CCA custody and he had alleged that CCA officials were acting in accord with a blanket policy; and (2) Plaintiff's allegation that his vegetarian meals lacked adequate nutritional value and caused him to lose 30 pounds was sufficient to satisfy the physical-injury requirement of

---

[1] On March 29, 2005, Judge Doty recused himself from further proceedings in this matter and it was reassigned to the Honorable Joan N. Ericksen. (Docket No. 47).

section 1997e(e).  See id.  The Eighth Circuit further instructed, on remand, that if Plaintiff's

claim under RFRA was untenable, that the Court should consider his claim under the RLUIPA.

See id.

On April 19, 2005, this Court ordered Plaintiff to file and serve an amended complaint,

in which he was required to: "(i) identify the legal bases for Plaintiff's claims, (ii) describe, in

separate numbered paragraphs, all of the factual allegations for Plaintiff's claim(s) against

each individual named Defendant, and (iii) clearly state the relief that Plaintiff is currently

seeking." (Docket No. 49.)  On July 14, 2005, Plaintiff mailed his amended complaint,[2] in

which he asserts claims arising under 42 U.S.C. §§ 1983, 1997e(e), and 2000cc.  (Am.

Compl.; [Docket No. 106], p. 2.)

In his amended complaint, Plaintiff alleges that CCA agreed to provide a religious diet

program, which agreement provided that participants "eat, and possess . . . only those food

items served as part of the religious diet program."  (Id. at pp. 2-3.)  Plaintiff alleges that PCF

contracted to provide him a Halal Food Diet and that PCF broke the contract by failing to

provide a Halal Food Diet, instead providing him only a vegetarian diet.  (Id. at p. 3.)  Plaintiff

alleges that the vegetarian diet did not provide him with the required daily nourishment and

that he consequently lost 30 pounds– characterizing his diet as "malnutrition to the point of

---

[2] Plaintiff's amended complaint was not docketed contemporaneous with its service, most likely because it appears that Plaintiff mailed it only to chambers and not to the Clerk's Office.  It is unquestioned that Defendants' were served with the amended complaint, as reflected both by their motion for an extension of time to file an answer and their subsequent filing of an answer to the amended complaint. (Docket No. 62, 69.) Under the circumstances, this Court has directed the Clerk's Office to docket the amended complaint as if it were filed on July 14, 2005, the date on which Plaintiff mailed the amended complaint. (Docket No. 106.) The amended complaint is now docketed as Document Number 106.

borderline famine." (Id. at pp. 3-4.)  Plaintiff further asserts that "all aforementioned cause of action pleadings that are not amended herein remains enforce [sic] and unchanged."[3]  (Id. at p. 4.)  Plaintiff alleges emotional and psychological suffering as a result of his "malnutrition" and seeks punitive damages in the amount of $5 million.  (Id. at p. 5.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S., 106 S. Ct. 2548, 2552 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S., 106 S. Ct. 2505, 2514 (1986).  The Court must view the evidence, and the inferences drawn from the evidence, in the light most favorable to the nonmoving party.  See Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy, and inexpensive determination of every action.'"  Celotex, 477 U.S., 106 S. Ct. at 2555.

─────────────────────

[3] The Court reads Plaintiff's assertion to mean that he has incorporated by reference the factual allegations and pleadings set forth in his original complaint.

## III.  DISCUSSION

### A.  Defendants' Mootness Argument

Defendants first contend that Plaintiff's claims for injunctive and declaratory relief are no longer actionable because he is not held at PCF or any other CCA facility.  In fact, the most recent address for Plaintiff shows him incarcerated at United States Penitentiary - McCreary, located in Pine Knot, Kentucky.  Plaintiff is thus no longer in the custody of CCA.  In most cases, prisoner claims for prospective relief pertaining to conditions of confinement do become moot when the prisoner is transferred to a different prison, because once the prisoner has been transferred, he is no longer subject to the conditions that prompted his lawsuit. Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999); Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).  In his amended complaint, Plaintiff requests only monetary damages and thus he has ceded any claim for prospective relief.  In any event, all such claims became moot when Plaintiff was transferred from CCA's custody to the Federal Bureau of Prisons.

### B.  Plaintiff's Compensatory Damage Claim

Defendants contend that Plaintiff's claims for compensatory damages are barred by 42 U.S.C. § 1997e(e), which provides that –

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

A sufficient physical injury is "less than significant but more than de minimis[.]" Pratt, 124 F.App'x at 467 (citing Mitchell v. Horn, 318 F.3d 523, 534-36 (3d Cir. 2003)).  In the absence of a sufficient physical injury, the PLRA blocks a prisoner's right to bring a claim for mental or

emotional injury in all federal actions.  See Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir.

2004), cert. denied sub nom. Royal v. Reid, 544 U.S., 125 S. Ct. 2528 (2005).

Defendants acknowledge that the Eighth Circuit held that Plaintiff's allegation of a 30-

pound weight loss was sufficient to plead a physical injury under the PLRA, but argue that the

Eighth Circuit did not have knowledge of the Plaintiff's height or overall weight in determining

the sufficiency of the pleading, and thus was unable to place Plaintiff's alleged weight loss in

proper context.  At the time Plaintiff was first incarcerated he weighed 260 pounds.  (Compl.

App. EE-Exh. 3 at p. 3.)  In answering Defendants' interrogatories, Plaintiff indicated that he

is 5' 8" tall and that as of January 20, 2006, he weighed 230 pounds.  (Chaffee Aff., Exh. A,

p. 3; [Docket No. 96].)

Defendants assert that Plaintiff's loss of 30 pounds over a 9-month period is not a

sufficient physical injury to support his claims for compensatory damages.  Defendants direct

the Court to the decision on remand in Mitchell v. Horn, which was cited by the Eighth Circuit

in this matter.  See Pratt, 124 F.App'x at 467 (citing Mitchell v. Horn, 318 F.3d at 534-36).  In

Mitchell v. Horn, the Third Circuit remanded to the District Court for a determination whether

the alleged physical injury was de minimis.  318 F.3d at 536.  On remand, the District Court

found that the plaintiff's allegations of "severe stomach aches, severe headaches, severe

dehydration, loss of weight, severe itching, due to the inability to take his prescribed

medication, nausea, physical weakness and blurred vision" did not constitute "more than

temporary, de minimis injury," and granted defendants' motion for summary judgment. Mitchell

v. Horn, No. Civ. A. 98-4742, 2005 WL 1060658, at *1, (E.D.Pa. May 5, 2005).  Defendants

argue in this case that Plaintiff presents the Court with allegations which do not even rise to

the level of those presented in <u>Mitchell v. Horn</u> and that Plaintiff's claim of physical injury simply

is not sufficient to form the basis of a federal claim for compensatory damages. Defendants

bolster their argument by asserting that at no time did Plaintiff seek medical treatment for his

alleged injury. In response, Plaintiff states –

> Defendants' put forth no offer of proof through an expert or witnesses affidavits
> hat support (1) that plaintiff did not suffer due to the weight loss, (2) that plaintiff
> did not seek medical treatment, nor has defendants' been able to prove that
> plaintiff's weight loss did not contribute to his inability to perform any exercise
> regime, his constant dizziness, or his constant hunger pains[.]

(Pl's Resp., p. 19, [Docket No.101].)

Plaintiff's response consists of mere assertions that Defendants have failed to meet

their burden. The Court disagrees. Defendants have produced specific evidence, consisting

of plaintiff's own responses to interrogatories, which place his weight loss in a context in which

no rational fact finder could conclude that he had suffered physical injury. Plaintiff, on the other

hand, wholly fails to set forth specific facts showing that there is a genuine issue for trial. <u>See</u>

<u>Anderson</u>, 477 U.S., 106 S. Ct. at 2514. The Court finds that the more fully developed record

in this matter clearly fails to support anything more than a de minimis physical injury, if that, and

that Plaintiff's claim for compensatory damages for purely mental and emotional injuries is

plainly barred by Section 1997e(e). It is therefore recommended that Plaintiff's claim for

compensatory damages be denied.

C. <u>Plaintiff's RLUIPA Claim</u>

Plaintiff alleges that Defendants have violated RLUIPA because they did not provide

him with Halal meals, and therefore that they placed a substantial burden on his practice and

free exercise of religion. (Pl's Resp., pp. 11-15, 17, 21.) Plaintiff seeks punitive damages for

the alleged violation of his rights.  Defendants argue that Plaintiff's claims fail as a matter of

law because he has failed to establish any violations under the RLUIPA.

RLUIPA provides in pertinent part –

(a) General rule

No government shall impose a substantial burden on the religious exercise of
a person residing in or confined to an institution . . . even if the burden results
from a rule of general applicability, unless the government demonstrates that
imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental
interest.

(b) Scope of application

This section applies in any case in which –

(1) the substantial burden is imposed in a program or activity that receives
Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would
affect, commerce with foreign nations, among the several States, or with Indian
tribes.

42 U.S.C. § 2000cc-1(2006).

The statute defines religious exercise as "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A)(2006).

To constitute a substantial burden, the government policy or actions must significantly inhibit

or constrain conduct or expression that manifests some central tenet of a person's individual

religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her

faith; or must deny a person reasonable opportunities to engage in those activities that are

fundamental to their religion.  Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 988 (8th Cir.

2004) (citing Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997)).  The least restrictive means of

furthering a compelling governmental interest requires that the limitations on free exercise

rights shall be "no greater than necessary to protect the governmental interest involved."  Cf.

Hamilton v. Schriro, 74 F.3d 1545, 1554 (8th Cir. 1996) (discussing claim arising under

RFRA).

        RLUIPA was enacted for the purpose of establishing a statutory free exercise claim for

prisoners that encompasses a higher standard of review than that which applies generally to

constitutional free exercise claims.  See Murphy, 372 F.3d at 986.  The Act includes language

virtually identical to that contained in its predecessor, RFRA, which was declared

unconstitutional as applied to the states and localities in City of Boerne v. Flores, 521 U.S.,

117 S. Ct. 2157 (1997) (holding that Congress had exceeded its authority by using its section

five power under the Fourteenth Amendment to enact the statute).  See 372 F.3d at 987; see

also Charles v. Verhagen, 220 F. Supp. 2d 937, 942-43 (W.D. Wisc. 2002), aff'd, 348 F.3d

601 (7th Cir. 2003).[4]  Nevertheless, while the government is required to meet a higher burden

than the rational relation test applicable in constitutional free exercise claim cases, a

significant degree of deference is accorded to the expertise of prison officials in evaluating

whether they met that burden.  See Murphy, 372 F.3d at 987 (citations omitted); Hamilton, 74

_____

        [4] Verhagen discussed the origin of RFRA as a response to Emp. Div., Dept. of Hum.
Resources of Oregon v. Smith, 494 U.S., 110 S. Ct. 1595 (1990), a case in which the
Supreme Court held that "neutral, generally applicable laws may be applied to religion
practices even when not supported by a compelling governmental interest" – and the genesis
of RLUIPA, which was enacted to address the Supreme Court's decision in City of Boerne,
declaring RFRA largely unconstitutional.  See 220 F. Supp. 2d at 942-43.

13

F.3d at 1553 ("The Supreme Court has long recognized the need to defer to the judgment of

prison administrators when evaluating the validity of a prison regulation that impinges an

inmate's First Amendment rights," particularly "where state penal institutions are involved.")

In fact, the legislative history of RLUIPA adopted a portion of RFRA's legislative history which

states:

> [T]he committee expects that courts will continue the tradition of giving due
> deference to the experience and expertise of prison and jail administrators in
> establishing necessary regulations and procedures to maintain good order,
> security and discipline, consistent with consideration of costs and limited
> resources.
>
> At the same time, however, inadequately formulated prison regulations and
> policies grounded on mere speculation, exaggerated fears, or post-hoc
> rationalizations will not suffice to meet the act's requirements.

Murphy, 372 F.3d at 987-88 (quoting S. REP. No. 103-111(1993); CONG. REC. S7775 (July

27, 2000)).

As such, this Court must determine whether Plaintiff has raised a genuine issue of

material fact as to whether a substantial burden was imposed on his religious practice.  If so,

after giving due deference to the expertise of prison officials in the operation of their prison,

this Court must then decide whether serving Plaintiff a vegetarian diet furthered a compelling

state interest by the least restrictive means.

Following Plaintiff's request for a diet in compliance with his beliefs in a Halal dietary

standard, PCF arranged for Plaintiff to be served vegan meals in accord with WDOC IMP

#6B, which specifies an Islamic or Muslim diet as "Non-Pork/Vegetarian."  (Wengler Aff., p.

4, ¶ 4;  [Docket No. 95].)  Plaintiff claims that such a diet violates his religious beliefs by  by

making "'IMPERMISSIBLE' what plaintiff's religion of Islam made 'Permissible', the eating of

14

red-meats, poultry and fish." (Pl's Resp., p. 20.)

According to Imam Ronald Beyah, who submitted an Affidavit in support of Defendants' motion for summary judgment, "Halal" is the Arabic word for "permissible," and is contrasted with "Haraam," which means "prohibited." (Beyah Aff., ¶ 6; [Docket No. 94].)  To maintain a Halal diet, one should eat only what is permissible and avoid that which is prohibited.  (Id.)  The central characteristic of a Halal diet is the absence of pork, which is strictly prohibited.  (Id.)  In order for other meat to be considered Halal, it must be slaughtered "with the name of God spoken on it." (Id.)  A vegetarian diet, which contains no meat, and a vegan diet, which contains no animal products of any kind, are Halal within the meaning of Islamic law, provided that the food does not come into contact with the pork.  (Id. at ¶ 7.)

An identical claim was dismissed with prejudice by the Honorable Donovan W. Frank.  See Amughmun v. Prairie Correctional Facility, No. 03-CV-2901, (DWF/JSM) (D. Minn. March 23, 2005) (Docket No. 95).[5]  This Court agrees with the reasoning and analysis of Amughmun, and finds, as a matter of law, that serving Plaintiff a vegan or vegetarian meal is not a substantial burden on his religion.  There is nothing in the record to indicate that Defendants served Plaintiff pork, which is strictly prohibited in a Halal diet.  Further, there is nothing in the record to indicate that Defendants served Plaintiff meat that was not properly slaughtered in accordance with Islamic law.  In sum, there is no evidence to suggest that Defendants served Plaintiff any food that was Haraam.

Plaintiff has failed to present any evidence that he must receive all foods that are Halal

---

[5] Adopting the Report and Recommendation of the Honorable Janie S. Mayeron.  Amughmun v. Prairie Correctional Facility. (Docket No. 90.)

in order to fulfill his religion or that receiving Halal meat is a central tenet of his religion. Several other federal courts have rejected claims similar to those that Plaintiff has attempted to present here. In one such case, the court concluded that the Halal diet demanded by a prisoner-plaintiff is <u>not</u> a "central tenet" of Islam, and that prisoners therefore have no First Amendment right to such a diet. <u>Abdullah v. Fard</u>, 974 F. Supp. 1112, 1117 (N.D. Ohio 1997), <u>aff'd</u> 173 F.3d 854 (6th Cir. 1999) (unpublished opinion); <u>see also</u> <u>Connor v. Ault</u>, No. C01-4123-MW, 2004 WL 444022, at *1-2 (N.D. Iowa March 11, 2004) (Magistrate Judge found defendants' failure to provide Halal meals to Muslim inmates did not violate their free exercise rights because the prison provided Muslim inmates with vegetarian meals). In <u>Kind v. Frank</u>, 329 F.3d 979 (8th Cir. 2003), the court held that jail officials were entitled to qualified immunity against a Muslim inmate's Halal diet claim based on their "objectively reasonable belief that they were not violating the plaintiff's constitutional rights by offering him a pork-free diet" rather than the Halal diet that the plaintiff had requested. <u>Id.</u> at 981. In <u>Williams v. Morton</u>, 343 F.3d 212 (3d Cir. 2003), the court affirmed the dismissal of a lawsuit very similar to Plaintiff's because "providing vegetarian meals [to Muslim prisoners], rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget." <u>Id.</u> at 218; <u>see also</u> <u>Watkins v. Shabazz</u>, No. 05-55071, 2006 WL 1381627, at *1 (9th Cir. May 15, 2006). Having found that Plaintiff did not meet his burden of persuasion with respect to the first prong of RLUIPA, it is recommended that Plaintiff's RLUIPA claims be denied.[6]

---

[6] Moreover, Plaintiff's remaining claim involves only punitive damages, and in order to proceed under such a claim he needed to produce evidence that the Defendants acted with

page

D.  Plaintiff's Breach of Contract Claim

Plaintiff alleges that he and CCA entered into a contract whereby CCA agreed to provide him with a Halal diet.  (Am. Compl., [Docket No. 106], p. 2-3.)  Plaintiff further alleges that CCA breached the contract by failing to provide him with a diet including Halal meat.  (Id. at p. 3.)  Defendants argue that there is no contract because the religious diet agreement which Plaintiff refers to simply provides for what Defendants are required to do under federal law.

This Court must apply the law of the state in which it sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 822 (1938).  Under Minnesota law, the existence of a contract is governed by the laws of the state in which it was made.  U.S. Fidelity & Guaranty Co. v. Louis A. Roser Co., 585 F.2d 932, 935 n.2 (8th Cir. 1978).  In this case, the Court must look to Minnesota's law because PCF is located in Appleton, Minnesota where the contract was made.  Defendants direct the court to Loyd v. Fabian, 682 N.W.2d 688 (Minn. Ct. App. 2004), in support of their argument that no enforceable contract was entered into between Plaintiff and CCA.

Under Minnesota law, "[t]he factor that distinguishes an unenforceable promise from an enforceable contract is consideration, or the voluntary assumption of an obligation by one

---

evil motive or intent, or showed reckless or callous indifference to his federally protected rights.  See Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997).  In this case, Plaintiff has failed to show that any of the Defendants acted with evil motive or intent or that they showed reckless or callous indifference to his rights.  To the contrary, the record indicates that, at all times, Defendants acted in accord with the policies set forth by the State of Wisconsin.  Accordingly, even if Plaintiff's claim was in some other respect viable, his claim for punitive damages should be dismissed on this basis.

party upon condition of an act or forbearance by the other." <u>Murray v. MINNCOR</u>, 596 N.W.2d 702, 704 (Minn. Ct. App. 1999). In <u>Loyd</u>, the Court found that the commissioner of corrections was obligated to provide appropriate mental health programs, and that by signing a "program contract," a prisoner agreed, *inter alia*, to abide by institutional rules and policies.   682 N.W.2d at 691.   The Court noted that while "a staff signature is present on the form, this signature at most acknowledges what the commissioner is already obligated and authorized to do-provide rehabilitative programs and enforce disciplinary rules." <u>Id.</u> Thus, the "document . . . [did] not bind the department of corrections in any way and therefore [wa]s not an enforceable contract." <u>Id.</u>

This Court agrees with Defendants that Plaintiff did not enter into an enforceable contract with CCA.  Defendants were required under federal law to provide Plaintiff with a religious diet upon his request, and the "religious diet participation agreement" was at most an acknowledgment that Defendants were obligated to comply with Plaintiff's request for a religious diet.   <u>See id.</u>  Moreover, even if the agreement could be construed as a contract, Plaintiff's handwritten request that he be provided a "Halal food diet <u>only</u>[,]" (Am. Compl., [Docket No. 106], Att. 3) (emphasis in original), cannot form the basis of an enforceable contract.   At most, Defendants "agreed" to provide Plaintiff with a vegetarian diet which complied with Halal standards.  (<u>Id.</u> at Att. 1.)  Accordingly, it is recommended that Plaintiff's breach of contract claim be denied.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Defendants' motion for summary judgment, (Docket No. 90), should be GRANTED;

2.  Plaintiff's claims should be DISMISSED WITH PREJUDICE.

Dated:   July 11, 2006

                     s/Arthur J. Boylan
                     ARTHUR J. BOYLAN
              United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **July 27, 2006**.